Thomas A. GRAHAM and
Elizabeth Graham

v.

COMMISSIONER OF
INTERNAL REVENUE.

MERIDIAN ENGINEERING, INC. OF
PENNSYLVANIA

v.

COMMISSIONER OF
INTERNAL REVENUE.

Appeal of Thomas A. GRAHAM, Elizabeth Graham, and Meridian Engineering, Inc. of Pennsylvania, Appellants.

No. 84–5366.

United States Court of Appeals,
Third Circuit.

Argued Feb. 12, 1985.

Decided Aug. 28, 1985.

Leonard J. Bucki (argued), Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellants.

W. Hunt Dumont, U.S. Atty., Newark, N.J., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, William A. Whitledge (argued), Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before GARTH, BECKER and ROSENN, Circuit Judges.

**OPINION OF THE COURT**

BECKER, Circuit Judge.

■ This appeal from a judgment of the United States Tax Court raises a number of questions concerning use by the Internal Revenue Service of information obtained from grand jury materials by means of a Fed.R.Crim.P. 6(e) order that would now be invalid under the Supreme Court's decision in *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). This information forms the basis for statutory notices of tax deficiency that were challenged by appellants Thomas A. Graham ("Graham") and Meridian Engineering, Inc. ("Meridian") in proceedings before the Tax Court.

In *Gluck v. United States*, 771 F.2d 750 (3rd Cir.1985), consolidated with this case

for disposition and decided today, we held that IRS summonses issued on the basis of information obtained by means of a similar Rule 6(e) order are enforceable because the IRS agents who obtained the information acted in good faith reliance on that order, which was issued by a United States District Court and was valid on its face. We concluded that, under such circumstances, enforcement of the summonses would not constitute an abuse of the court's process.

Although this case arises out of proceedings to determine deficiencies in the Tax Court, while *Gluck* involved the enforcement of summonses in the district court, we hold that this difference in procedural posture is inconsequential and that our decision in *Gluck* dictates the outcome here, where the IRS agents also acted in good faith reliance on a facially valid Rule 6(e) order. We thus hold that the information obtained by these IRS agents from grand jury materials properly forms the basis of the challenged deficiency notices, and we will affirm the judgment in favor of the IRS for the amounts stated therein.[1]

## I.

## A.

In September 1971, a federal grand jury sitting in the Eastern District of Pennsylvania began an investigation into contracts between several commercial vendors and the City of Philadelphia. On October 4, 1971, the United States Attorney filed an *ex parte* motion in the district court for an order, pursuant to Fed.R.Crim.P. 6(e),[2]

seeking authorization to disclose to agents of the IRS matters occurring before the grand jury so that the agents could lend their technical assistance to the investigation.[3] On the same day, the district court entered an order granting the motion. The order stated, in part:

> the United States Attorney and Special Attorneys of the United States Department of Justice are authorized to utilize the assistance of agents, special agents and employees of the Internal Revenue Service in this Grand Jury Investigation, and may give access to such persons of books, records, documents and transcripts of testimony before the Grand Jury in this investigation, and *the said agents, special agents, and employees shall not be prohibited from utilizing such material in the course of their official duties, for either criminal or civil purposes*, provided that the subpoenaed material shall remain at all times under the aegis of attorneys for the government.

(Emphasis added.)

On January 15, 1973, the grand jury issued a subpoena directing Meridian to produce all business records relating to its tax liability for calendar or fiscal years ending 1969, 1970, and 1971. Meridian complied with this subpoena by handing over the requested documents. On October 25, 1973, after the original grand jury's term expired, a new federal grand jury was convened in Philadelphia to continue the investigation. Once again the United States Attorney moved for a Rule 6(e) order, and

---

1. Because we hold that the outcome in this case is controlled by *Gluck,* we leave for another day the resolution of several legal issues that otherwise would be implicated by this appeal. *See infra* note 8.

2. Prior to 1977, Fed.R.Crim.P. 6(e) provided, in pertinent part:
   (e) *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who tran-

scribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

3. On the use of government employees for assistance in grand jury investigations, see *In re Grand Jury Investigation William H. Pflaumer & Sons, Inc.,* 53 F.R.D. 464 (E.D.Pa.1971).

such an order was entered by the district court on November 20, 1973. This Rule 6(e) order, like the earlier one, explicitly stated that the IRS agents lending assistance to the Justice Department investigation could use information obtained from subpoenaed materials for civil matters, so long as these materials remained under the aegis of the attorneys for the government.

On April 4, 1974, Graham, president, chairman of the board, and principal shareholder of Meridian, testified before the grand jury under a grant of immunity. On April 24, he was subpoenaed to produce all his bank account records for the years 1969 through 1973, and his diaries and appointment books for the year 1973. Graham moved in the district court to quash the subpoena or for a protective order prohibiting access to these records for civil use by IRS personnel. The government countered that the appropriate time to challenge civil use of the grand jury materials would be when the materials were put to such use, if ever, and that civil use of grand jury materials is permitted by Rule 6(e). Graham's motion was denied by the district court on June 3, 1974, and he complied with the subpoena.

On February 20, 1980, the IRS mailed to Meridian and Graham formal statutory notices of income tax deficiency for the years 1969 through 1972. The primary adjustments related to amounts alleged to have been personal expenses of Graham that were paid by Meridian. The IRS included these amounts in Graham's income as dividends, and also disallowed them as business deductions to Meridian. The Service based its determination of deficiencies on information obtained from the grand jury

materials by means of the Rule 6(e) orders discussed above.

### B.

On May 21, 1980, the taxpayers (Meridian and Graham) petitioned the Tax Court for a redetermination of the deficiencies pursuant to 26 U.S.C. § 6213. The parties stipulated to the relevant facts and filed a joint motion under Tax Court Rule 122 to submit the cases for consideration without trial.[4] Appendix for Appellants at 47a. In their brief in support of the petition for redetermination, the taxpayers argued that the IRS obtained the information upon which it based the statutory notices of deficiency in violation of grand jury secrecy, and that this required invalidation of the notices and dismissal of the action. Alternatively, the taxpayers argued that the tax court should afford the relief granted in *Cohen v. Commissioner.*[5] The IRS countered that its use of grand jury materials pursuant to Rule 6(e) orders was not improper, and that, in any case, invalidation of notices of deficiency is not an appropriate remedy for any underlying abuse of grand jury secrecy by the agency. Furthermore, the IRS contended, since the taxpayers had stipulated that the amounts in the notices of deficiency were "uncontested," the Tax Court could enter judgment in favor of the IRS on that basis alone.

While the case was pending before the Tax Court, the Supreme Court issued its decision in *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). In *Baggot,* the Court interpreted Rule 6(e) as not permitting access by IRS agents to grand jury materials for the purpose of preparing civil tax liabilities. In light of the *Baggot* decision, the tax court

---

**4.** One of the stipulations, important to the Tax Court's decision, read as follows:

Petitioners Thomas A. Graham and Elizabeth Graham agree that if it is finally determined that the notice of deficiency issued to them for the years in issue is not invalid the deficiencies in income tax and additions to tax determined therein, although not admitted, are uncontested so that decision may be entered in accordance with respondent's determinations contained in the statutory notice of

deficiency ... without the necessity for the introduction of any evidence by petitioners or respondent.

Appendix for Appellants at 47a. Meridian agreed to a similar stipulation. *See id.* at 47a–48a.

**5.** 42 T.C.M. (CCH) 312 (1981). In that case, the Tax Court suppressed all evidence obtained in violation of grand jury secrecy and shifted the burden of going forward to the government.

ordered supplemental briefing by the parties. The taxpayers argued that *Baggot* should be applied retroactively to invalidate the Rule 6(e) orders that led to the information upon which the notices of deficiency were based, and that the notices should therefore be struck down as the fruits of illegally obtained evidence. The IRS, while admitting that the Rule 6(e) orders would be invalid if issued after *Baggot*, contended that *Baggot* should not be given retroactive application.

In a decision adopted by the entire court, *Graham v. Commissioner of Internal Revenue*, 82 T.C. 299 (1984), the Tax Court found in favor of the IRS on a very narrow ground. The court assumed the illegality of the IRS's use of grand jury materials but held that Graham and Meridian had

6. The court also appeared to hold that the naked assessment rule, whereby a taxpayer may challenge a notice of deficiency on the grounds that it is "without *any* foundation whatsoever," *see United States v. Janis,* 428 U.S. 433, 441, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976) (emphasis in original), was unavailable to Graham and Meridian because the rule has been applied only in cases involving unreported income from illegal sources. Appendix for Appellants at 108a n. 7. Furthermore, the court stated, even if it were to suppress the allegedly tainted grand jury evidence and apply the naked assessment rule, the taxpayers' challenge would fail because "the parties' stipulation that the deficiencies and additions may be entered pursuant to [the Commissioner's] statutory notices 'without the necessity for the introduction of any evidence by [the Commissioner]' satisfies whatever 'minimal predicate evidence' he would be required to adduce under this rule." *Id.* at 109a (citations omitted).

7. Four judges wrote opinions concurring in the result. Judge Wilbur, joined by Judge Whitaker, opined that the Tax Court has no power to examine the validity of an order issued by a federal district court, and that, even assuming it does, suppression of evidence obtained by IRS agents in good faith pursuant to a Rule 6(e) order would have no deterrent effect and thus would be an improper application of the exclusionary rule. *Graham,* 82 T.C. at 311. Judge Nims, joined by Judges Dawson, Goffe, Wiles, Korner, Shields, Hamblen, and Clapp, wrote separately to emphasize that the invalidation of the statutory notice of deficiency is not available as a remedy in the Tax Court because the court depends upon the notice for its jurisdiction. "It would be surprising indeed," he wrote, "if this or any other court ... were to deny its own jurisdiction solely on evidentiary grounds."

requested an inappropriate remedy—invalidation of the statutory notices of deficiency.[6] Having determined in this manner that the notices were immune from the taxpayers' challenge, the court, taking notice of the above-mentioned stipulations, *see supra* note 4, entered judgment in favor of the IRS for the amounts stated in the deficiency notices.[7] Graham and Meridian appeal, raising essentially the same contentions as they raised in the Tax Court.

## II.

As the above summary of the numerous opinions filed by the Tax Court makes clear, *see supra* typescript at 8–9 & n. 7, this case raises a number of interesting and unresolved questions of law.[8] We

*Id.* at 314. Judge Whitaker, joined by Judge Swift, expressed his view that there was nothing wrong with the IRS's use of the grand jury materials in this case, even if the Rule 6(e) order was subsequently rendered invalid by *Baggot,* and to note his reservation about the majority's intimation that the Tax Court will never invalidate a notice of deficiency. Finally, Judge Cohen, joined by judges Sterrett, Wiles, and Chabot, stated that she did not want the court to foreclose the possibility that the Tax Court might, given the appropriate circumstances and proper request for relief, "control[ ] the evidence ... in order to maintain the integrity of proceedings before us." *Id.* at 317.

8. These include: the retroactive effect of the Supreme Court's decision in *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983); the ability of the Tax Court to declare a deficiency notice invalid; the applicability of the naked assessment rule in cases not involving allegedly unreported income from illegal sources; and the propriety of employing the exclusionary rule in tax court proceedings, *see Cohen v. Commissioner of Internal Revenue,* 42 T.C.M. (CCH) 312 (1981). *But see United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule inapplicable to evidence illegally seized by state agents in federal proceeding to determine civil tax liability); *Tirado v. Commissioner of Internal Revenue,* 689 F.2d 307, 309 (2d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) (extending *Janis* holding to case involving federal agents). If the exclusionary rule were applied, the case would also raise the issue of what result would follow, e.g., whether the burden of going forward with some other evidence supporting the notices of deficiency

need not address these issues in order to decide the case, however, for its outcome is dictated by our decision in the companion case of *United States v. Gluck*, 771 F.2d 750. In *Gluck*, we were confronted with a challenge to the enforcement of IRS summonses that were issued as a result of information obtained through a Rule 6(e) order of the kind subsequently declared invalid by the Supreme Court in *Baggot*. Reasoning that an IRS summons must be quashed only if its enforcement would constitute an abuse of the court's process, we concluded that the summonses in Gluck should not be quashed because the IRS agents who obtained the grand jury information had acted in good faith reliance upon a facially valid Rule 6(e) order. In reaching this conclusion, we relied in substantial part on two Supreme Court cases involving application of the exclusionary rule in the fourth amendment context, *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) and *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

In *Peltier*, the Court considered whether the exclusionary rule should be applied retroactively to suppress evidence from a warrantless border patrol search that

would have been invalid under *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The Court held that the evidence should not be suppressed because the officers reasonably believed in good faith that their search was legal under the state of the law as they found it. Thus, suppression of the evidence would neither promote judicial integrity nor deter future misconduct by law enforcement officials. *See Peltier*, 422 U.S. at 537–39, 95 S.Ct. at 2317–18. Similarly, the *Leon* Court held that evidence should not be suppressed in a criminal trial when law enforcement officials act in objective good faith reliance on a facially valid search warrant that is later declared invalid. *Leon*, 104 S.Ct. at 3421.

Given our decision in *Gluck*, even assuming that appellants could surmount every other legal obstacle standing in the way of relief from the judgment of the Tax Court, *see supra* note 8, we must hold in favor of the IRS. As in *Gluck*, the IRS agents who used grand jury information in this case acted in good faith reliance on facially valid Rule 6(e) orders issued by a United States District Court.[9] Under such circumstances, curative action with respect to the evidence obtained from the grand jury, such

---

would then shift to the IRS. *See Janis*, 428 U.S. at 441–42, 96 S.Ct. at 3025–26; *Suarez v. Commissioner of Internal Revenue*, 58 T.C. 792, 813–15 (1972); *Cohen*, 42 T.C.M. (CCH) at 324.

**9.** The taxpayers contend that the Rule 6(e) orders did not authorize the use of the grand jury material for the preparation of civil tax liabilities, and thus that the IRS agents acted in bad faith. They base this interpretation of the orders on the statement in them that "the materials shall remain at all times under the aegis of attorneys for the government," and on *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D.Pa.1976). In *Hawthorne*, the district court interpreted the same Rule 6(e) orders that are presently at issue and assessed the government's compliance therewith.

The taxpayers' allegation of bad faith on the part of the IRS is wholly without merit. The Rule 6(e) orders stated explicitly that IRS employees "shall not be prohibited from utilizing such material in the course of their civil duties, for either criminal or civil purposes." It is clear that the orders authorized the IRS agents assist-

ing the criminal investigation to obtain information from the grand jury materials for use in the preparation of civil tax liabilities so long as control over the documents remained with the United States Attorney. The taxpayers have not alleged that the subpoenaed materials did not remain under the control of the United States Attorney until their return to the taxpayers.

Nor did the *Hawthorne* court preclude the IRS agents from making civil use of the grand jury materials. Rather, that court found "no evidence of bad faith or abuse of grand jury process," 406 F.Supp. at 1119, and noted that "there [is no] merit to plaintiff's contention that no civil use may ever be made of the subpoenaed material. So long as the government did not act in bad faith, ultimate civil use is proper." *Id.* at 1119 n. 35. While *Hawthorne* did not foreclose the possibility that the taxpayers could later challenge civil use on the grounds that the request by the government attorneys for technical assistance was a subterfuge to secure IRS agents access to the grand jury materials, no such allegation has been made by the taxpayers here.

**386**

as suppressing its use as a basis for the notices of deficiencies, is necessary neither to preserve the judicial process, *see Peltier,* 422 U.S. at 536–38, 95 S.Ct. at 2316–18,[10] nor to deter future misconduct by IRS agents. *See Leon,* 104 S.Ct. at 3418–19. As we noted in *Gluck,* "[t]hese agents will ... continue to act pursuant to facially valid court orders—as indeed they should. Moreover, deterrence is unnecessary because *Baggot* forecloses access by the IRS to grand jury materials for the purpose of determining civil tax liabilities." *Gluck,* 771 F.2d at 758. The fact that the question on this appeal arises out of a tax court proceeding, rather than out of a district court summons enforcement proceeding, is thus an immaterial distinction with respect to the issue at hand.

### III.

■ The IRS agents who obtained the information that forms the basis of the notices of deficiency issued to Graham and Meridian did so in good faith reliance on facially valid Rule 6(e) orders issued by the district court. That information, therefore, may properly stand in support of those notices. Meridian and Graham have thus failed to prove that the notices should be declared invalid, or that they are "naked and without *any* foundation," *Janis,* 428 U.S. at 442, 96 S.Ct. at 3026 (emphasis in original). Furthermore, particularly in light of their stipulation that the amounts in the notices are uncontested, the taxpayers have failed to carry their burden of proving the amount of tax they are entitled to recover. *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Rule 142(a) of the Rules of Practice and Procedure of the United States Tax Court; *see Janis,* 428 U.S. at 440, 96 S.Ct. at 3025. Accordingly, we will affirm the judgment of the Tax Court in favor of the IRS for the amounts specified in the deficiency notices.

---

**10.** The extent to which judicial integrity remains a valid and independent justification of the exclusionary rule is a matter of some de-

bate, but we need not address it here. *See Gluck,* at 758 n. 8.